In re Lucile R. COLVIN, d/b/a Fashions for Tall Girls, Debtor.

Gregory K. CREWS, Trustee, Plaintiff,

v.

Lucile R. COLVIN, d/b/a Fashions for Tall Girls, Defendant.

Bankruptcy No. 85–1073–BK–J–7.
Adv. No. 86–358.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 13, 1988.

Albert H. Mickler, Jacksonville, Fla., for debtor.

Gregory K. Crews, Jacksonville, Fla., for trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This cause came before the Court upon the Trustee's complaint for turnover of property of the estate, namely certain funds received by the debtor from her retirement plan. The debtor has defended the action by asserting that the proceeds are exempt from administration by virtue of a spendthrift clause contained in the retirement plan and as proceeds of an annuity contract.

Upon consideration of the evidence, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Lucile R. Colvin, (defendant) filed a Chapter 11 petition on November 25, 1985.

2. On September 9, 1986, this Court entered an order converting the case to Chapter 7.

3. In December, 1986, defendant received notice from her former employer, Clay Electric Cooperative, Inc., that she had the option of receiving the actuarial equivalent of her retirement benefits in the form of a lump sum settlement as opposed to a deferred annuity.

4. The opportunity to make such an. election was given pursuant to section 3.09 of the Clay Electric Cooperative Retirement Plan, which provides:

> If the single-sum Actuarial Equivalent of a participant's benefit is greater than $3,500, or such greater amount as established by future regulation, but less than $7,000, subject to the Administrator's discretion and the approval of the Participant and Eligible Spouse, if applicable, following the election procedure of section 5.04(2), the Actuarial Equivalent benefit may be paid in a single-sum settlement; provided, however, the settlement (a) is made due to termination of Plan participation, and (b) constitutes the entire actuarial present value of the Accrued Benefit.

5. The Clay Electric Retirement Plan provides further that the normal form of benefit payments for both married and unmarried individuals, shall be an annuity. Benefit payments are to be made each month to the participant upon (a) normal retirement; (b) early retirement upon specified age and service conditions; and (c) upon early termination of employment prior to ten (10) years.

6. The Plan also provides that employer contributions shall be made to the Plan for administration by a third-party fiduciary. The plan participants, including the defendant, have no input into the administration

of the Plan or into the amount of entitlements. The participant only has discretion as to the method of payment once certain conditions are met.

7. Section 10.03 of the Retirement Plan retains a common spendthrift clause.

8. Under Section 5.04(2), the debtor could not exercise her option to receive the lump sum settlement until she had received notification from the Retirement Plan Administrator that, in fact, she was elibible for that option.

9. Upon receipt of that notice, Colvin elected to receive the lump sum settlement and in December, 1986, received a distribution of $5,934.92.

## CONCLUSIONS OF LAW

1. Title 11 U.S.C. § 541 provides that the bankruptcy estate includes all legal or equitable interest of the debtor in property as of the commencement of the case, except as provided in subsections (b) and (c)(2).

2. Section 541(c)(2) of the Bankruptcy Code provides:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

3. A spendthrift clause is a restriction on alienation which may be found to exclude certain assets as property of the estate under this subsection. These clauses are usually characterized by provisions against alienation of the funds by the voluntary act of the beneficiary or against the demands of his or her creditors. Section 10.03 of Colvin's retirement plan contains such restrictions.

4. Florida law generally recognizes the validity of spendthrift clauses and will allow them against the valid claims of creditors. However, where a beneficiary has the power to control the plan's assets, this dominion over the property is such that the interest is not exempt from claims for payment of debts.

5. Thus, the first issue to confront the Court is whether the defendant exercised sufficient control over her interests in the retirement plan so as to defeat the § 541(c)(2) exclusion.

6. Here, the plaintiff argues that the defendant has such control over her interest by virtue of the option given to her upon the termination of her employment. However, the Court cannot agree and concludes that the debtor merely had the option to select the method of payment she was to receive under the plan. Such an election by the beneficiary as to the method of payments, when the election is subject to approval of an independent third-party, does not constitute absolute dominion over trust property. *Gennet v. ICMA Retirement Corp.*, 65 B.R. 58 (Bkrtcy.S.D.Fla. 1986); *Bakst v. Guernsey*, 54 B.R. 68 (Bkrtcy.S.D.Fla.1985).

7. In this case, the right to select the method of payment arose only because of the early termination of defendant's employment with Clay Electric. Although it may be argued that the right to quit her job lay within her discretion, this option is not tantamount to "absolute dominion" over the retirement plan. This Court finds that having to leave employment in order to receive retirement benefits is a significant restriction upon the exercise of that right. *See, Goff v. Taylor*, 706 F.2d 574, 589 (5th Cir.1983).

8. The Court is also persuaded by the fact that the plaintiff failed to present any other evidence tending to show that the debtor exercised dominion over her retirement benefits prior to receiving them. Instead, the evidence tends to show that the administration of the retirement plan was completely independent of defendant's control:

(i) Contributions were made directly to the Plan Administrator by her employer;

(ii) The Plan Administrator invested those funds as he saw fit;

(iii) The beneficiaries had little or no say in how those funds would be administered;

(iv) The Plan Administrator distributed those funds only when certain condi-

tions predicated upon the employee's length of service, age and average salary were met;

(v) The beneficiary has only an expectancy in proceeds of the fund once those benefits are vested.

9. Thus, the Court concludes that the spendthrift clause contained in Section 10.-03 of the retirement plan adequately excludes the retirement benefits from the bankruptcy estate.

10. The Court finds it unnecessary to determine whether the retirement plan qualifies as an annuity under the exemption granted in Section 222.14, Florida Statutes.

The Court will enter a separate Final Judgment in accordance with these findings.