In re Steven S. SABER, Debtor.

Sonya L. Salkin, as Bankruptcy Trustee for the Estate of Steven S. Saber, Plaintiff,

v.

Esther B. Slobodinsky, individually and as Successor Trustee, and Steven S. Saber, Defendants.

Bankruptcy No. 98–22402–BKC–PGH.
Adversary No. 98–2316–BKC–PGH–A.

United States Bankruptcy Court,
S.D. Florida,
Fort Lauderdale Division.

Feb. 24, 1999.

Ronald G. Neiwirth, Miami, FL.

Reggie D. Sanger, Ft. Lauderdale, FL, for Esther Slobodinsky.

Steven S. Saber, Hollywood, FL, Pro Se.

Chad P. Pugatch, Ft. Lauderdale, FL.

Sonya Salkin, Plantation, FL, trustee.

*MEMORANDUM DECISION AND OR-DER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST STEVEN SABER FOR DENIAL OF DISCHARGE AND AGAINST ESTHER B. SLOBODIN-SKY FOR AVOIDANCE OF FRAUDULENT TRANSFER, STE-VEN S. SABER'S CROSS MOTION FOR SUMMARY JUDGMENT, AND ESTHER B. SLOBODINSKY'S CROSS MOTION FOR SUMMARY JUDGMENT*

PAUL HYMAN, Jr., Bankruptcy Judge.

**THIS MATTER** came before the Court on October 30, 1998, upon Sonya L. Salkin's ("Plaintiff"), as Bankruptcy Trustee for the Estate of Steven S. Saber, Motion for Summary Judgment Against Steven S. Saber ("Saber") for Denial of Discharge and Against Esther B. Slobodinsky ("Slobodinsky") for Avoidance of Fraudulent Transfer (the "Motion for Summary Judgment"). On November 23, 1998, Slobodinsky filed a Response to Plaintiff's Motion for Summary Judgment and a Cross Motion for Summary Judgment. On November 30, 1998, Saber filed a Response to Plaintiff's Motion for Summary Judgment and a Cross Motion for Summary Judgment. Because Saber could not agree with Plaintiff and Slobodinsky on all of the material facts, Saber filed a Unilateral Statement of Facts on December 4, 1998. Subsequently, on December 30, 1998, Plaintiff and Slobodinsky filed a Joint Stipulation of Facts. The Court finds that there are sufficient undisputed material facts to render partial summary judgment appropriate.[1] *See Clemons v. Dougherty County,* 684 F.2d 1365, 1368 (11th Cir.1982) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Having reviewed the Motion for Summary Judgment, the Responses and Cross Mo-

---

1. The Court notes that although all parties were unable to produce one Stipulation of Facts, the Court is able to glean sufficient undisputed material facts from Saber's Unilateral Statement of Facts and Plaintiff and Slobodinsky's Stipulation of Facts to enter partial summary judgment. Furthermore, both Saber and Slobodinsky filed Cross Motions for Summary Judgment addressing the identical issues raised in Plaintiff's Motion for Summary Judgment.

tions for Summary Judgment, Saber's Unilateral Statement of Facts, and the Joint Stipulation of Facts, the Court hereby enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Saber is a practicing attorney with a law office located at 2016 Harrison Street, Hollywood, Florida 33020 (the "Counsel Building"). Saber has a *juris doctor* degree and a master of laws degree in taxation. His law practice includes, *inter alia,* representing debtors in bankruptcy. On December 28, 1990, pursuant to Section 689.071, Florida Statutes, Saber entered into a Florida Land Trust Agreement (the "Land Trust") and a Beneficiary Agreement (Co-ownership) with Samuel S. Forman ("Forman"), and Lewis H. Cohen ("Cohen"). Neither agreement was recorded. The Counsel Building, which is the res of the Land Trust, is worth approximately $150,000.00 and was refinanced approximately six years ago with a mortgage of at least $75,000.00.[2] Forman was designated as the Trustee of the Land Trust and one of its three Beneficiaries. In accordance with § 689.071, Forman received 100% of the legal and equitable title to the Counsel Building. Cohen and Saber were the other two Beneficiaries. Originally, each Beneficiary held a one-third beneficial interest in the Land Trust. Pursuant to paragraph 2(b)(4) of the Land Trust, the interest of the Beneficiaries "shall be personal property. The Beneficiar[ies] shall not have any right, title or interest in or to any portion of the legal or equitable title to the Property."

On June 18, 1991, Cohen assigned his one-third beneficial interest in the Land Trust to Saber. On August 29, 1991, Forman assigned his one-third beneficial interest in the Land Trust to Saber, giving Saber 100% of the beneficial interest. On that same day, Forman executed a Warranty Deed, conveying the legal and equi-

table title of the Counsel Building to Saber and making Saber the Successor Trustee of the Land Trust. As a result of the August 29, 1991 assignment and conveyance, Saber became the sole Beneficiary, holding 100% of the beneficial interest in the *personal property* of the Land Trust, and the Trustee, holding 100% of the legal and equitable interest in the *real property* of the Land Trust.

Almost two years later, on July 8, 1993, Saber purported to assign his 100% beneficial interest in the personal property of the Land Trust to his mother, Slobodinsky. On that date, there were no judgments or suits initiated against Saber, and Saber was solvent. In 1995, however, William C. Stasch sued Saber for legal malpractice in the Circuit Court for the 17th Judicial Circuit, Broward County, Florida (Case No. 95–013554(14)).

On January 9, 1998, at 9:00 a.m., the parties to the malpractice suit attended mediation. An agreement was not reached at mediation and so the parties proceeded to trial the following week. On the same day as the mediation, Saber executed a Quit Claim Deed purportedly resigning his position as Trustee and making Slobodinsky the Second Successor Trustee of the Land Trust. On January 16, 1998, at the conclusion of the malpractice trial, the jury entered a verdict in favor of William C. Stasch and against Saber. The written final judgment, awarding William C. Stasch $613,584.90, was signed on February 2, 1998. On April 8, 1998, Saber voluntarily filed for protection under Chapter 7 of the Bankruptcy Code (the "Petition Date") Saber was insolvent when he filed for bankruptcy.

On June 16, 1998, Plaintiff filed an Adversary Proceeding (No. 98–2196–BKC–PGH) to recover two pieces of property, namely Boynton Beach Property and Volusia County Property, from Slobodinsky and Sandra Shapira ("Shapira"), Saber's

---

**2.** In Saber's Response, he contends that the Counsel Building was refinanced with a $75,-000.00 mortgage, while Plaintiff asserts that it was refinanced with a $100,000.00 mortgage.

sister. On October 14, 1998, the parties to that Adversary Proceeding filed a Stipulation which resulted in Plaintiff's recovery of the Boynton Beach and Volusia County Property, without any admission of liability on the part of Slobodinsky or Shapira. On September 15, 1998, Plaintiff filed the instant Adversary Proceeding to recover an alleged fraudulent or preferential transfer to Slobodinsky and for denial of Saber's discharge.

In Plaintiff's Motion for Summary Judgment, Plaintiff alleges that Saber fraudulently transferred the Counsel Building and made false oaths in the Bankruptcy Schedules and Statement of Financial Affairs. Based thereon, Plaintiff argues that Saber should be denied his discharge pursuant to 11 U.S.C. § 727(a)(2), (3), & (4). Plaintiff further asserts that this Court should avoid the allegedly fraudulent transfer of the Counsel Building to Slobodinsky for the benefit of Saber's Bankruptcy Estate.

In Saber's Response and Cross Motion for Summary Judgment, Saber contends that he did not make false oaths in his Bankruptcy Schedules and Statement of Financial Affairs. Instead, Saber insists that he made careless omissions; he did not intend to mislead or defraud any creditor. Furthermore, Saber asserts that he transferred the Counsel Building to Slobodinsky in 1993, and so he did not fraudulently transfer that real property to an insider within one year of the Petition Date. Saber therefore argues that his discharge should not be denied.

Finally, in Slobodinsky's Response and Cross Motion for Summary Judgment, she also contends that Saber transferred the Counsel Building to her in 1993, rather than within one year prior to the Petition Date as Plaintiff suggests. Therefore, Slobodinsky argues that the Court should not avoid the 1993 transfer of the Counsel Building for the benefit of Saber's Bankruptcy Estate because it was not fraudulent.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(F), (H), & (J). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), (H), & (J).

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that Summary Judgment is appropriate if the Court determines that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). "Summary Judgment is appropriate when, after drawing all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broadcasting Co., Inc.,* 844 F.2d 988, 992 (2d Cir.1988).

In a motion for summary judgment, the moving party initially bears the burden of establishing the absence of a genuine issue as to any material fact. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548 (citing *Adickes,* 398 U.S. at 159, 90 S.Ct. 1598). That burden can be satisfied by demonstrating the absence of evidence supporting the

nonmovant's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. When a motion for summary judgment is made and supported by the movant, Fed.R.Civ.P. 56(e) requires the nonmoving party to set forth specific facts demonstrating that genuine issues of material fact remain for trial. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In the instant case, both Saber and Slobodinsky filed Cross Motions for Summary Judgement in response to Plaintiff's Motion for Summary Judgment seeking avoidance of fraudulent transfer and denial of discharge. The Court, having considered the facts and arguments presented by all parties, finds that Partial Summary Judgment on the issues before the Court is appropriate.

In Plaintiff's Motion for Summary Judgment, Plaintiff argues initially that pursuant to the Merger Doctrine, the Land Trust terminated on August 29, 1991 when Saber obtained 100% of the legal and equitable interest in the real property and 100% of the equitable interest in the personal property of the Land Trust. Based thereon, Plaintiff asserts that Saber's assignment of all of his interest in the Land Trust on July 8, 1993 was a nullity. Because Saber owned the Counsel Building in fee simple absolute since August 29, 1991, Plaintiff argues that Saber's Quit Claim Deed to Slobodinsky on January 9, 1998 was a fraudulent transfer because the Quit Claim Deed transferred the Counsel Building to Slobodinsky, who as Saber's mother is an insider, within one year prior to the Petition Date. As the transfer was allegedly fraudulent, Plaintiff concludes that the Court should avoid it for the benefit of Saber's Bankruptcy Estate pursuant to 11 U.S.C. § 548(a), and deny Saber's discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

In Slobodinsky's Response, she argues that the Merger Doctrine does not operate on a Florida Land Trust[3] pursuant to Section 689.071, Florida Statutes. Therefore, according to Slobodinsky, the Land Trust was not terminated on August 29, 1991 when Saber obtained 100% of the legal and equitable interest in the real property and 100% of the equitable interest in the personal property of the Land Trust. Slobodinsky asserts that the July 9, 1993 assignment of all of Saber's interest in the Land Trust to Slobodinsky effectively transferred Saber's entire beneficial interest in the Land Trust to Slobodinsky for monies she lent Saber prior to the assignment. This assignment, according to Slobodinsky, "was the operative transfer of the property" of the Land Trust to Slobodinsky. Furthermore, Slobodinsky asserts that the Quit Claim Deed executed on January 9, 1998, was nothing more than a change in Trustee under the Land Trust from Saber to Slobodinsky; "[n]o property of Saber individually was transferred since a trustee under a land trust is not the land trust owner." As the July 8, 1993 assignment, which arguably transferred property of the Land Trust to Slobodinsky, occurred more than one year before the Petition Date, Slobodinsky concludes that it was not a fraudulent transfer of the Counsel Building and so cannot be avoided for the benefit of Saber's Bankruptcy Estate.

■ The Court agrees with Slobodinsky that according to the Land Trust, at its inception, Forman held the legal and equitable interest in the real property of the Land Trust as the Trustee. The Court further agrees that the Land Trust clearly prescribes that Forman, Cohen, and Saber held equitable interests in personal property as Beneficiaries of the Land Trust. The Court also agrees that § 689.071, Florida Statutes, which defines and describes Florida Land Trusts and the trust-

---

**3.** A land trust as a legal entity originated in Illinois and so is sometimes referred to an Illinois Land Trust. *See* Ill.Rev.Stats. ch. 26, s. 9–106; *Elgin State Bank v. Cowsert (In re Cowsert)*, 14 B.R. 335, 338 (Bankr.S.D.Fla. 1981).

ee's interest therein, is applicable to the instant case. Paragraph 1 of the Land Trust in the instant case states that "title to the Property shall be conveyed to the Trustee in accordance with and the rights of the parties shall be governed, to the extent applicable, by the provisions of F.S. § 689.071, as amended." Subsection (1) of § 689.071 states that the trustee of a Florida Land Trust is vested with "full rights of ownership over the real property or interest therein[.]" § 689.071, Fla.Stat. Furthermore, paragraph 2(b)(4) of the Land Trust states that the "rights and powers, as well as the interest of the Beneficiary under this Trust Agreement, shall be personal property. The Beneficiary shall not have any right, title or interest in or to any portion of the legal or equitable title to the Property." Subsection (4) of § 689.071 states that if the Land Trust Agreement "contains a provision defining and declaring the interests of beneficiaries thereunder to be personal property only, such provision shall be controlling[.]" Finally, this Court agrees with Slobodinsky that the beneficiary of a Florida Land Trust is the owner of the real property of the trust even though the trustee holds 100% of the legal and equitable interest in the real property of the Land Trust. This Court, in *In re Ameriswiss Associates,* 148 B.R. 349, 351 (Bankr.S.D.Fla.1992), held that "the beneficiary of a land trust is the 'equitable owner of real property' within the meaning of the [Bankruptcy Code]" such that if the beneficiary is a debtor, the res of the trust is property of the debtor's bankruptcy estate. *Accord Begier v. Internal Revenue Service,* 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (ordinary trust); *United States v. Petersen Sand & Gravel, Inc.,* 806 F.Supp. 1346, 1359 (N.D.Ill.1992) (Illinois Land Trust). In the instant case, the language of the Land Trust makes it clear that although the Trustee *holds* the legal and equitable title to the real property of the Land Trust, the Trustee may not use or affect said property without the Beneficiaries' permission or direction.

The Court, however, does not agree with Slobodinsky's suggestion that Saber did not become the owner of the real property of the Land Trust in fee simple absolute on August 29, 1991. On that date, Forman transferred all of his "rights, power, privileges, and beneficial interest in [the Land Trust], including all interest in the property held subject to said trust agreement" to Saber. This transfer effectively transferred Forman's one-third beneficial interest in the personal property of the Land Trust to Saber, resulting in Saber holding 100% of the beneficial interest in the personal property of the Land Trust. Also on that date, Forman executed a Warranty Deed making Saber the Successor Trustee and transferring 100% of the legal and equitable interest in the real property of the Land Trust to Saber. As a result of these two August 29, 1991 transfers, Saber became the sole Beneficiary and the Trustee of the Land Trust, holding 100% of the equitable interest in the personal property of the Land Trust and 100% of the legal and equitable interest in the real property of the Land Trust.

Plaintiff argues that the Merger Doctrine operates to terminate a trust in such a situation. The Merger Doctrine holds that the same person cannot at the same time be trustee and beneficiary of the same identical interest. Instead, there is a merger of legal and equitable interest when the sole trustee is the sole beneficiary. Well-established Florida case law dictates that the legal and equitable interests are merged where nothing remains to be done to carry out the intention of the settlor. *See Reid v. Barry,* 93 Fla. 849, 112 So. 846 (1927); *Axtell v. Coons,* 82 Fla. 158, 89 So. 419 (1921); *Contella v. Contella,* 559 So.2d 1217 (Fla. 5th DCA 1990); *Harvest v. Craft Construction Corp.,* 187 So.2d 72 (Fla. 3d DCA 1966). When the trustee is the only beneficiary, the trust is no longer needed to carry out the intention

of the settlor.[4]

Slobodinsky asserts that the Merger Doctrine does not apply to Florida Land Trusts. In other words, Slobodinsky asserts that the trustee of a Florida Land Trust can be the sole beneficiary. Slobodinsky suggests that "the doctrine of merger is not automatic but rather *may* apply," and asserts that "there was no merger under the facts of the cases" cited by Plaintiff. Section 689.071, Florida Statutes, does not indicate that Florida Land Trusts are exempt from the Merger Doctrine. If the Florida Legislature wanted to immunize Florida Land Trusts, it certainly would have explicitly stated that such trusts are exempt from the long-standing and well-established Merger Doctrine.[5] There is no merger in the cases Plaintiff cites because the trustee in each case did not hold *all* of the beneficial interest in the trust; the trustee was not the *sole* beneficiary. *See Contella*, 559 So.2d 1217; *Harvest*, 187 So.2d 72.

The purpose of a Florida Land Trust is to provide developers with a method of doing business whereby a trust comprising certain real property is settled and its "trustee may convey freely without the joinder of spouse or beneficiaries," may "deal with the trust property as if it were his own," and third persons may "deal with the trustee without having to inquire into his authority." *Taylor v. Richmond's New Approach Ass'n, Inc.*, 351 So.2d 1094, 1095–96 (Fla. 2d DCA 1977). *See also Grammer v. Roman*, 174 So.2d 443 (Fla. 2d DCA 1965). Even with this authority, the trustee of a Florida Land Trust must still procure the permission and direction of the beneficiaries before conducting business and affecting the property of the trust. *See* 76 Am.Jur.2d §§ 11 & 49 (1992). Although the real and personal property interests of a Florida Land Trust are divided between the trustee and beneficiary, a Florida Land Trust is essentially the same as an ordinary trust in terms of the duties, rights, and responsibilities of the trustee and beneficiary. *See id.* Thus, there is no reason why the Merger Doctrine should not operate to merge all of the interests of a Florida Land Trust when one person holds all of those interests.

Slobodinsky further argues that the Merger Doctrine does not apply to the instant case because Saber did not hold the legal and equitable interest in the Land Trust for the same duration, citing *Axtell*. The *Axtell* Court, though, did not stand for such a proposition. Instead, the *Axtell* Court said that "[t]he trustee and the beneficiary must be distinct personalities or otherwise there could be no trust, and the merger of interests in the same person would effect a legal estate in him of the same duration as the beneficial interest designed." *Axtell*, 89 So. at 421. In fact, the only time the *Axtell* Court used the term "duration" was in the sentence cited above. If Slobodinsky's understanding of *Axtell* is correct, the only way the legal and equitable interest in a trust could exist in the same person for the same

---

4. "It is contrary to the conception and purpose of a trust that the person designated as trustee be given absolute and unrestricted control over the property with the right to sell and use the proceeds of the sale as he may see fit without liability or accountability to a *cestui que* trust. The purpose of a trust is to provide some one to hold and manage the trust property or funds derived therefrom for the benefit of some person or persons to whom he shall be accountable, not only for the specific trust property, but for the proceeds of its sale, its accretions, its earnings, and any and all funds coming into his hands from, by, or through the property of which he is the trustee." *Axtell*, 89 So. at 420.

5. The Merger Doctrine has been applied by Florida Courts since at least 1921, when the Florida Supreme Court decided *Axtell*. This Court presumes that the doctrine operates to terminate *any* trust where the trustee is the sole beneficiary and the Florida Legislature has not specifically exempted that type of trust. Because the Florida Legislature did not specifically exempt Florida Land Trusts, this Court holds that the Merger Doctrine operates on them.

duration is if the legal and equitable interest of the trust existed in the same person from the trust's inception. Under such a theory, the Merger Doctrine would only apply if one person owns the legal and equitable interest of a trust *ab initio*. Clearly, Slobodinsky misinterprets the *Axtell* Court and other courts that describe and apply the Merger Doctrine. To be sure, the very sentence from which Slobodinsky derives the "same duration" argument unequivocally states that "[t]he trustee and the beneficiary must be distinct personalities or otherwise there could be no trust[.]" *Id.*

Considering the overwhelming majority, if not consensus, of Florida Courts that apply the Merger Doctrine to terminate trusts where the trustee is the sole beneficiary, and given the absence of language in § 689.071 exempting Florida Land Trusts from the Merger Doctrine, this Court finds that the Merger Doctrine applies to Florida Land Trusts. Florida Courts do not discriminate among the different types of trusts in their application of the Merger doctrine. Rather, Florida Courts uniformly apply the Merger Doctrine to situations where the trustee is the sole beneficiary of the trust.

▪ Therefore, this Court, in conformity with Florida case law and with respect to § 689.071, holds that the Merger Doctrine operated to terminate the Land Trust on August 29, 1991, when Saber obtained 100% of the equitable interest in the personal property of the Land Trust and 100% of the legal and equitable interest in the real property of the Land Trust. As Saber became the owner in fee simple absolute of the Counsel Building on August 29, 1991 pursuant to the Merger Doctrine, his July 8, 1993 assignment to Slobodinsky of "all interest in the property held subject to said trust agreement" was ineffective in transferring the Counsel Building or an interest therein to Slobodinsky because the Land Trust no longer existed.[6] To have effectively transferred the Counsel Building or an interest therein to Slobodinsky, Saber, as the owner in fee simple absolute, would have had to execute and record a Deed transferring that property interest. Because Saber did not do so on July 8, 1993 or on any date, he was still the owner in fee simple absolute of the Counsel Building on January 9, 1998, when he executed the Quit Claim Deed, purporting to make Slobodinsky the Second Successor Trustee of the Land Trust and transfer 100% of the legal and equitable interest in the real property of the Land Trust to Slobodinsky.[7] This Quit Claim Deed was simply a nullity because it attempted to make Slobodinsky the Second Successor Trustee of a nonexistent land trust and transfer a bifurcated property interest that no longer existed.[8] Saber did

---

6. "Where ... the trustee is made beneficiary of the same estate, both in respect to its quality and quantity, the inevitable result is that the equitable is merged in the legal estate, and the *latter alone remains.*" *Axtell*, 89 So. at 421 (emphasis added). Therefore, it would be impossible for Saber to transfer the beneficial interest in the Land Trust (as he attempted to do on July 8, 1993) because that beneficial interest merged in the legal interest on August 29, 1991 pursuant to the Merger Doctrine.

7. The exact title of this Quit Claim Deed is "QUIT CLAIM DEED TO TRUSTEE UNDER LAND TRUST—THE COUNSEL BUILDING TRUST." The Counsel Building Trust is the Land Trust at issue in the instant Motion and Cross–Motions for Summary Judgment which was terminated on August 29, 1991.

8. Pursuant to the Merger Doctrine, the bifurcated personal property and real property interests in the Land Trust merged into one legal interest on August 29, 1991. As a consequence, the Land Trust was terminated. Therefore, Saber could not transfer by Quit Claim or any other deed his interest as Trustee of the Land Trust (which included 100% of the legal and equitable interest in the real property of the trust) to Slobodinsky simply because the Land Trust no longer existed. If Saber wanted to make Slobodinsky trustee of a trust comprising the Counsel Building, he would have to execute a new land trust agreement naming Slobodinsky trustee, instead of quit claiming the legal and equitable interest, that he once held as trustee, in the real property of the terminated Land Trust. *See Axtell*, 89 So. at 421.

not legally transfer any property interest to Slobodinsky on January 9, 1998 or within one year prior to the Petition Date. Because Saber owned the Counsel Building in fee simple absolute as of the Petition Date, making it property of Saber's Bankruptcy Estate, the Court will not (and finds no need to) avoid any transfer for the benefit of Saber's Bankruptcy Estate pursuant to 11 U.S.C. §§ 544(a) & 548(a).

■ The Court finds that there is a factual dispute as to whether Saber possessed the "actual intent to hinder, delay, or defraud any entity to which the debtor was or became on or after the date that such transfer was made or such obligation incurred, indebted" when he executed the Quit Claim Deed on January 9, 1998. 11 U.S.C. §§ 548(a)(1)(A). *See also* 11 U.S.C. § 727(a)(2)(A). Accordingly, the Court will not deny Saber's discharge by way of summary judgment, pursuant to 11 U.S.C. § 727(a)(2)(A), on the ground that he fraudulently transferred the Counsel Building or an interest therein.

In the Motion for Summary Judgment, Plaintiff alleges that, in addition to fraudulently transferring some interest in the Counsel Building, Saber failed to disclose that he owned or had owned the Counsel Building, the Boynton Beach Property, and the Volusia County Property in his Bankruptcy Schedules. Furthermore, Plaintiff asserts that Saber did not disclose the conveyances of the Boynton Beach and Volusia County Property until after Plaintiff filed the adversary proceeding to recover those properties, and still has not reported the conveyance of the Counsel Building. Moreover, Plaintiff alleges that Saber intentionally listed the incorrect amount for a tax refund he was entitled to, failed to disclose the existence of two Great Western Bank (n/k/a Washington Mutual) accounts, and failed to turn over $70,000.00 in receivables that Saber allegedly claimed to have at the § 341 Meeting. Plaintiff concludes that Saber's false oaths in his schedules are grounds for denial of

discharge pursuant to 11 U.S.C. 727(a)(3) & (4).

In Saber's Response, he denies intentionally concealing information about the Boynton Beach and Volusia County Property. Saber explains that he carelessly omitted the two properties from his Bankruptcy Schedules; he did not make false oaths. Saber insists that he amended his Statement of Financial Affairs to include his ownership and conveyance of said properties prior to Plaintiff's filing the adversary proceedings. Saber further asserts that he was not required to include the Counsel Building in his Bankruptcy Schedules because upon transferring that real property to Slobodinsky via the July 8, 1993 assignment, Saber held no equity interest in said property within one year prior to the Petition Date. Saber also denies having indicated at the § 341 Meeting that he had $70,000.00 in receivables and denies Plaintiff's implication that he misused any tax refunds. Saber concludes that his discharge should not be denied because he did not make false oaths in his Bankruptcy Schedules or Statement of Financial Affairs.

In the preamble of the Motion for Summary Judgment, Plaintiff contends that "the proof in this case is overwhelmingly documentary in nature and that the documents, upon review, lead inescapably to the conclusion that there is no bona fide issue of material fact with regard to the allegations of the Complaint[.]" The Court does not agree with this statement. Although there is sufficient evidence for the Court to determine that the Counsel Building is property of Saber's Bankruptcy Estate, the Court finds that there is a factual dispute as to whether Saber made false oaths and other misrepresentations in the Bankruptcy Schedules and Statement of Financial Affairs. Saber disputes Plaintiff's contention that he "concealed, destroyed, mutilated, falsified, or failed to keep records or preserve any recorded information ... from which debtor's financial condition or business transactions

might be ascertained[.]" 11 U.S.C. § 727(a)(3). Furthermore, Saber denies Plaintiff's assertion that he "knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4). Because there are material facts in dispute concerning the Plaintiff's objection to Saber's discharge, this Court will deny Plaintiff's Motion for Summary Judgment as to the denial of Saber's discharge.

### CONCLUSION

In concluding the foregoing, the Court initially finds that the Merger Doctrine applies to Florida Land Trusts. As such, the Merger Doctrine operated to terminate the Land Trust and make Saber the owner in fee simple absolute of the Counsel Building on August 29, 1991, when Saber obtained 100% of the equitable interest in the personal property of the Land Trust and 100% of the legal and equitable interest in the real property of the Land Trust. Therefore, Saber's July 8, 1993 assignment to Slobodinsky of his beneficial interest in the Land Trust was a nullity. Similarly, the January 9, 1998 Quit Claim Deed was ineffective in making Slobodinsky the Second Successor Trustee of the Land Trust and transferring the real property interest in the Land Trust because the Land Trust no longer existed. Because no property was transferred to Slobodinsky on January 9, 1998 or within one year prior to the Petition Date, because Saber owned the Counsel Building as of the Petition Date, and because the Counsel Building is property of Saber's Bankruptcy Estate, the Court will deny Plaintiff's Motion for Summary Judgment as to the avoidance of the alleged transfer of the Counsel Building for the benefit of Saber's Bankruptcy Estate pursuant to 11 U.S.C. § 548(a).

Furthermore, the Court concludes that there are factual disputes as to whether Saber fraudulently transferred the Counsel Building or an interest therein, and whether Saber intended to hinder, delay, or defraud creditors or make false oaths. Therefore, the Court will deny Plaintiff's Motion for Summary Judgment as to the denial of Saber's discharge on those grounds pursuant to 11 U.S.C. § 727(a)(2), (3), & (4).

### ORDER

Accordingly, in light of the foregoing analysis, the Court hereby **ORDERS AND ADJUDGES** that:

1. Because Saber owned the Counsel Building in fee simple absolute as of the Petition Date, making it property of Saber's Bankruptcy Estate, the Plaintiff's request to avoid the transfer of the Counsel Building or an interest therein for the benefit of Saber's Bankruptcy Estate pursuant to 11 U.S.C. §§ 544(a) & 548(a) is denied.

2. Because there are factual disputes as to whether Saber fraudulently transferred the Counsel Building or an interest therein under 11 U.S.C. § 727(a)(2), concealed or destroyed records under 11 U.S.C. § 727(a)(3), or made false oaths under 11 U.S.C. § 727(a)(4), the Court denies Plaintiff's request to deny Saber's discharge.

3. Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate Partial Final Judgment incorporating these findings of fact and conclusions of law will be entered contemporaneously herewith.

**DONE AND ORDERED.**