In re Katherine C. WELLS, Debtor.

Charles W. Grant, as Chapter 7 Trustee, Plaintiff,

v.

Katherine C. Wells, individually and as Trustee of the Manual Carlos Trust a/k/a Katherine Carlos Tooke Wells, Katherine Wells, Katherine Carlos, and Cathryn Wells, Defendant.

Bankruptcy No. 98–3295–3P7.
Adversary No. 00–98.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 19, 2001.

Raymond R. Magley & Denise E. Barnett of Smith, Hulsey & Busey, Jacksonville, FL, for plaintiff.

Ronald Cutler, Daytona Beach, FL, Robert N. Reynolds, Winter Park, FL, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding is before the Court upon the Chapter 7 Trustee's Second Amended Complaint to determine the bankruptcy estate's interest in real property. On December 7, 2000, the Court held a trial at which the parties presented testimonial evidence. The Court provided the parties with the opportunity to tender briefs in support of their arguments. Upon the evidence presented and the parties' submissions, the Court enters the Following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On October 1, 1992, Katherine C. Wells ("Defendant") and her mother, Ruth C. Clanton ("Ruth Clanton") entered into a trust agreement known as the Manuel Carlos Trust (the "Trust"). (Pl.'s Ex. 1.) The provisions of the Trust named Ruth Clanton as the settlor and lifetime beneficiary and named Defendant as the trustee and beneficiary upon the death of Ruth Clanton.

2. On the same day, Ruth Clanton, Defendant, and Defendant's husband, Royce L. Wells, executed a warranty deed (the "Warranty Deed") transferring real property located in Seminole County, Florida, known as the Five Points Plaza Shopping Center [1] ("Five Points Plaza"), to Defendant in her capacity as trustee of the Trust. (Pl.'s Ex. 15; Tr. at 74.) The Warranty Deed was recorded on October 19, 1992. (Pl.'s Ex. 15.)

3. On January 24, 1997, Ruth Clanton passed away. (Pl.'s Ex. 2.)

4. On April 24, 1998, Defendant filed a petition under Chapter 11 of the Bankruptcy Code. (Pl.'s Ex. 4.) This case was subsequently converted to Chapter 7 on January 11, 2000 and Charles W. Grant ("Plaintiff") was appointed as trustee of the bankruptcy estate. (Tr. at 67–68.)

5. Defendant's Schedule A lists her as the "Fee Owner" of three pieces of real estate, including Five Points Plaza. (Pl.'s Ex. 5.)

6. Plaintiff conducted a title search upon Five Points Plaza and several potential title exceptions appeared, including one pertaining to the Trust. (Tr. at 71–73.)

7. On March 20, 2000, Plaintiff filed his complaint to determine the bankruptcy estate's interest in Five Points Plaza. Plaintiff contends that (a) the Trust was terminated upon the death of Ruth Clanton and at that time Defendant became the proprietor of Five Points Plaza, (b) Defendant owns Five Points Plaza, (c) Five Points Plaza has been conveyed from Defendant to Plaintiff by operation of law, and (d) Five Points Plaza now belongs to the bankruptcy estate pursuant to 11 U.S.C. § 541.

8. Defendant contends that Five Points Plaza does not belong to the bankruptcy estate because (1) the Trust contains a spendthrift provision, and (2) the federal

---

1. Five Points Plaza is legally described as: "The West ½ of the Northeast ¼ of the Southwest ¼, North and West of SR 15–600 and North of SR 427 of Section 22, Township 20 South, Range 30 East, Seminole County, Florida." (Pl.'s Ex. 15.) This property is also referred to as 3450 & 3500 U.S. Highway 17/92, Lake Mary, Florida. (Pl.'s Ex. 17.)

tax liens against Five Points Plaza constitute a legal disability resulting in the continuation of the Trust.

9. On December 7, 2000, the Court held a trial to determine the bankruptcy estate's interest in Five Points Plaza.[2]

### CONCLUSIONS OF LAW

[1] The commencement of a bankruptcy case creates an estate which is comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1) (West 2001). Determination of whether a debtor's interest in property constitutes property of the estate is a question of federal law. "However, unless there is a strong countervailing federal interest, the actual existence of a debtor's right in property, including its nature and scope, is determined by looking at state law." *In re Greer*, 242 B.R. 389, 394 (Bankr.N.D.Ohio 1999) (quoting *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Consequently, the Court must examine Florida state law to determine whether Five Points Plaza belonged to the bankruptcy estate or to the Trust when Defendant filed her petition.

### A. Applicability of the Merger Doctrine

 Trust law provides that upon the establishment of a trust, the legal title is held by the trustee whereas the equitable title rests with the beneficiary. *In re Grieves*, 250 B.R. 405, 406 (Bankr.M.D.Fla. 2000). The law is firmly established in Florida that a trust cannot exist where the legal and equitable interests of the trust are vested in one individual.[3] *See Reid v. Barry*, 93 Fla. 849, 112 So. 846 (1927); *Axtell v. Coons*, 82 Fla. 158, 89 So. 419 (1921). "If there is no separation of these interests, the doctrine of merger may apply and the trust [may] be terminated." *Contella v. Contella*, 559 So.2d 1217, 1218 (Fla.Dist.Ct.App.1990) (quoting *Axtell*, 89 So. at 420). The rationale behind the merger doctrine holds that "[w]hen the trustee is the only beneficiary, the trust is no longer needed to carry out the intention of the settlor." *Salkin v. Slobodinsky (In re Saber)*, 233 B.R. 547, 553–54 (Bankr. S.D.Fla.1999).[4] The merger doctrine is applicable where either the entire beneficial interest passes to the trustee or where the legal title passes to a sole beneficiary. *Contella*, 559 So.2d at 1219. Upon merger of the legal and equitable titles, the holder of both interests possesses fee simple ownership of the property. *Saber*, 233 B.R. at 555.

 In the present case, Defendant acted solely as trustee while her mother

---

**2.** Plaintiff's complaint requests that the Court declare the bankruptcy estate as the rightful owner of three parcels of real property that originally belonged to the Trust. These properties include: (1) Defendant's homestead, (2) property adjacent to Defendant's homestead, and (3) Five Points Plaza. (Doc. 5.) Upon examination of the exhibits and transcript, the Court did not find any substantial evidence indicating that the Trust contained property other than Five Points Plaza. The Court based its conclusion primarily upon the fact that the Warranty Deed only conveyed property previously identified as Five Points Plaza. (Pl.'s Ex. 15; Pl.'s Ex. 5; Pl.'s Ex. 17.) Accordingly, the Court withholds judgment regarding the ownership of Defendant's homestead and the adjacent property in this opinion, and deals solely with the proprietorship of Five Points Plaza.

**3.** The merger doctrine applies to all types of trusts, including land trusts. *Salkin v. Slobo-*

*dinsky (In re Saber)*, 233 B.R. 547, 554 (Bankr.S.D.Fla.1999).

**4.** "It is contrary to the conception and purpose of a trust that the person designated as trustee be given absolute and unrestrained control over the property with the right to sell and use the proceeds of the sale as he may see fit without liability or accountability to a [beneficiary]. The purpose of a trust is to provide someone to hold and manage the trust property or funds derived therefrom for the benefit of some person or persons to whom he shall be accountable, not only for the specific trust property, but for the proceeds of its sale, its accretions, its earnings, and any and all funds coming into his hands from, by, or through the property of which he is the trustee." *Saber*, 233 B.R. at 554 (quoting *Axtell*, 89 So. at 420).

was alive. However, upon the death of Ruth Clanton on January 24, 1997, Defendant assumed the role of beneficiary, as well. (Pl.'s Ex. 1; Tr. at 106–07.) Consequently, Defendant was vested with both legal and equitable title to the Trust at that time. Pursuant to the merger doctrine, the two titles merged into a single fee simple interest and the Trust was thereby extinguished. A deed of conveyance was not required to validate the merger since the merger was effected by operation of law. *See generally Saber,* 233 B.R. at 547. On April 24, 1998, when Defendant filed for bankruptcy under Chapter 11, she was the fee simple owner of Five Points Plaza which previously belonged to the Trust. Since this was a prepetition interest, it became property of the bankruptcy estate on the petition date pursuant to 11 U.S.C. § 541.[5]

■ At trial, Defendant posited that the language of the Trust permits a beneficiary to continue the Trust, if desired. (*See* Pl.'s Ex. 1 at 4.) This argument, however, is invalid because it ignores the policy expressed by the merger doctrine. The merger principle is not merely a default provision of law that may be bypassed via agreement; rather, it is a legal mandate that must be followed by all trust instruments created under Florida law.[6]

Additionally, Defendant argues that the Trust has continued its existence despite the death of Ruth Clanton for the following reasons: (1) the Trust contains an enforceable spendthrift provision which protects the corpus of the Trust, and (2) the Defendant is under a legal disability, namely a large federal tax lien, which prohibits any distributions to her estate from the Trust.

### B. Exclusion of Property from the Estate under 11 U.S.C. § 542(c)(2) due to Spendthrift Clause

■ Section 541(a) defines which interests are included as property of the bankruptcy estate. The exclusionary clause of § 541(c), however, limits the sweeping nature of § 541(a).[7] In support of her claim, Defendant relies upon § 541(c)(2) which reads, in pertinent part: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2) (West 2001).

This Court has held that a spendthrift clause is a recognized restriction on alienation under § 541(c)(2) and Florida state law, and such a provision may be used to exclude certain assets from the bankruptcy estate. *In re Goshe,* 85 B.R. 157, 159 (Bankr.M.D.Fla.1988) (quoting *In re Colvin,* 81 B.R. 679, 681 (Bankr.M.D.Fla. 1988)); *see also Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (holding that "applicable nonbankruptcy law" includes state spendthrift trust law).

5. Plaintiff advances several compelling arguments in favor of treating the property as an asset of Defendant's bankruptcy estate, including collateral and judicial estoppel and the application of Fla. Stat. chs. 689.07–.071. Moreover, Defendant contends that she filed bankruptcy for the Trust, rather than for herself individually. Because the Court has already established that the application of the merger doctrine terminated the Trust, the Court need not address Plaintiff's additional arguments or decipher Defendant's intent regarding the existence of the Trust.

6. There is some authority stating that merger may be avoided where the settlor's intent would be frustrated or an inequitable result would be produced. *See* George T. Bogert, *Trusts,* § 151 (6th ed.1988). Neither circumstance is present in this case. The Trust was created for the benefit of the settlor during her lifetime and then for the benefit of Defendant. The termination of the Trust would not thwart either purpose.

7. Defendant misinterprets 11 U.S.C. § 541(c) as an exemption provision. In fact, claims of exemption are governed by 11 U.S.C. § 522. An interest must be property of the estate in order for an exemption to be available to the debtor. On the other hand, an item that is excluded by § 541 is never brought into the debtor's bankruptcy estate in the first place.

Spendthrift trusts are "created with a view of providing a fund for the maintenance of another, and at the same time securing it against [her] own improvidence or incapacity for self-protection." *Goshe*, 85 B.R. at 159 (quoting *Croom v. Ocala Plumbing and Elec. Co.*, 62 Fla. 460, 57 So. 243, 244 (1911)). Defendant claims that the Trust contains an enforceable spendthrift provision which prohibits Plaintiff from reaching the corpus of the Trust. The Court has closely reviewed the Trust and does not find that Ruth Clanton, the settlor of the Trust, unmistakably meant to create a spendthrift trust. "In order to create a spendthrift trust, the [settlor] must clearly manifest his intent to restrain the beneficiary from alienating his interest." *Nixon v. P.J. Pedone & Co., (In re Nichols)*, 42 B.R. 772, 776 (Bankr. M.D.Fla.1984) (quoting Lowell, *Florida Law of Trusts*, § 27–1 (1976)). To the contrary, the Trust gives Defendant full authority to dispose of the principal and income of the Trust in both her trustee and beneficiary capacity.[8] Although Defendant may argue that absolute dominion over the corpus of the Trust was granted to her as trustee, and not as beneficiary, this distinction is meaningless since she serves both roles.

The obvious fact that Defendant solely controlled the Trust violates the very purpose behind a spendthrift trust. Where the trustee and beneficiary are the same person, it is impossible for the trustee to supervise the improvidence of the beneficiary. "It is for this reason that the [sole] trustee and the sole beneficiary cannot be one in the same under Florida law. Clearly, a spendthrift trust cannot exist if the beneficiary is able to control the assets of the trust before its maturation." *Dollinger v. Bottom (In re Bottom)*, 176 B.R. 950, 952 (Bankr.N.D.Fla.1994) (citations omitted). The Court finds that the Trust did not continue as a spendthrift trust for the aforementioned reasons, and Five Points Plaza is not excludable under § 541(c)(2) on this basis.

### C. Exclusion of Property from the Estate under 11 U.S.C. § 541(c)(2) due to Tax Lien

Section 6321 of the Internal Revenue Code provides that where a taxpayer neglects or refuses to pay any federal tax after receiving a demand for such payment, a lien is created, by operation of law, in favor of the United States upon all property and rights to such property belonging to the taxpayer. 26 U.S.C. § 6321 (2001). This lien attaches at the time the assessment is made. § 6322.

The Court has already determined that the Trust expired upon the death of Ruth Clanton on January 24, 1997 and full ownership of Five Points Plaza was transferred to Defendant by application of the merger doctrine. *See supra* Part A. Defendant seeks to bypass this result by contending that the provisions of the Trust permit its continuation upon the death of Ruth Clanton if "the beneficiaries shall be under any disability." (*See* Pl.'s Ex. 1.) Defendant asserts that the nature of her disability is the large federal tax lien against Five Points Plaza. (Def.'s Exs. 1, 2.)

The tax lien, however, was not assessed upon the property until September 26,

---

**8.** Examples of Defendant's complete and unfettered discretion regarding the assets of the Trust are far too numerous for the Court to recite in full. The Court has therefore selected parts of the trust instrument in support of its position:

a. "Following the death of RUTH C. CLANTON, the Trustee shall distribute the principal and income to KATHERINE CARLOS WELLS ...."

b. "[T]he Trustee shall have the right to use the income as well as the corpus of the trust if necessity requires in the sole direction of the Trustee ...."

c. "The Trustee may lease, rent, sell, reinvest, use, dispose of or retain any part or all of the property in said trust ...."

d. "[T]he Trustee shall distribute the corpus and the income from the trust to the beneficiaries ...."

(Pl.'s Ex. 1.)

1997. (Def.'s Exs. 1, 2.) By this time, Defendant had already become the fee simple owner of Five Points Plaza. Consequently, the tax assessment attached to Defendant's property and not property of the Trust, since the Trust had already expired. Defendant cannot argue that the imposing tax lien hindered her access to the corpus of the Trust, since the lien did not come into existence until after the termination of the Trust. Thus, the property was already within her control by the time the tax lien attached.[9] Since a debtor passes all of her interests in property to her estate by virtue of § 541(a), Plaintiff acquired an interest in Five Points Plaza on behalf of Defendant's bankruptcy estate despite the federal tax lien.[10]

### CONCLUSION

The Court finds that the Trust was terminated upon the death of the settlor, Ruth Clanton. At that time, Defendant gained both legal and equitable title to Five Points Plaza and the interests were merged resulting in fee simple ownership of the property. Upon filing for bankruptcy, title to Five Points Plaza was vested in Defendant's bankruptcy estate and Plaintiff obtained Defendant's rights in the property pursuant to 11 U.S.C. § 541. A separate judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

---

9. Defendant fears that by allowing the Plaintiff to assume control of the property, she will be making an unlawful distribution in abrogation of the rights of her creditors, namely the IRS. However, as the Court reminded Defendant at the trial, "the trustee cannot cut out the rights of any of the parties. All the trustee does is step into the shoes of [Defendant]." (Tr. at 45.)

10. Defendant argues that the "disability" created by the large tax lien on Five Points Plaza makes it impossible for Defendant to exercise "legal authority or practical ability" in dealing with the assets of the Trust. Note, however, that a federal tax lien does not limit the reach of the bankruptcy trustee unless the tax collector has already taken possession of the property of the debtor. Where the tax collector has not taken possession, the property may be drawn into the estate, although the tax lien is preserved upon the property. *See Stevan v. Union Trust Co. of D.C.,* 316 F.2d 687, 692 (D.C.Cir.1963) (citations omitted). Defendant has not cited any statute, case law or other relevant authority suggesting otherwise.